# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SEAN T. BENSON,
          Plaintiff,

      v.                                       Case No. 25-C-462

LISA SCHUERMAN, *et al*.,
          Defendants.

## DECISION AND ORDER

Plaintiff Sean T. Benson, who is representing himself, is proceeding on an Eighth Amendment claim in connection with allegations that Defendants Lisa Schuerman, Erin Wenger, Kataryna Krainyk, and Brenda Dorau failed to provide adequate medical care for his degenerative disc disease at the Waupun Correctional Institution in August 2024 and September 2024.  ECF Nos. 1, 7, & 27.  On March 3, 2026, Defendants filed  motions for summary judgment based on Plaintiff's failure to properly exhaust administrative remedies prior to bringing this lawsuit.  ECF Nos. 49 & 53.  The record shows that Plaintiff's first two internal complaints were, for one reason or another, not received by the prison and the third was received five months late with no explanation from Plaintiff as to its untimeliness. Therefore, Plaintiff did not properly exhaust administrative remedies prior to bringing this lawsuit and I will grant Defendants' motions and dismiss this case without prejudice.

## I.     UNDISPUTED FACTS

At the relevant time, Plaintiff was incarcerated at the Waupun Correctional Institution, where Defendants Lisa Schuerman, Erin Wenger, Kataryna Krainyk, and Brenda Dorau were nurses.  ECF No. 51, ¶¶1-3; ECF No. 55, ¶12.  According to the

complaint, Plaintiff suffers from degenerative disc disease.  ECF No. 1.  On August 29, 2024, Defendants allegedly discontinued his prescription for Topiramate then refused to prescribe something different in September 2024, causing Plaintiff prolonged and unnecessary pain.  ECF Nos. 1 & 7.

According to Plaintiff, he attempted to file an inmate complaint in connection with these allegations three times.  ECF No. 58, ¶¶3 & 5; *see also* ECF No. 51, ¶20. On September 17, 2024, Plaintiff drafted an inmate complaint that stated,

> "My provider is refusing to treat my nerve pain caused by Degenerative Disc Disease…My Topiramate was discontinued by my provider which was prescribed for management of my nerve pain, caused by my Degenerative Disc Disease.  She provided nothing in its place and refuses to do so, despite the nerve pain I am suffering."

ECF No. 58-1 at 2.  Plaintiff states that he placed this inmate complaint at his cell door for correctional officers to pick up and deliver to the Institution Complaint Examiner ("ICE") office.  ECF No. 58, ¶3.  Plaintiff states that this inmate complaint was taken from his door, but he never heard back about this inmate complaint, so on September 22, 2024, he filed an Interview Request form asking about the status of his September 17 inmate complaint.  ECF No. 58-1 at 4.  A few days later, on September 24, 2024, Plaintiff received a response stating, "I do not see that you submitted a complaint that day.  If you did submit something you may resubmit & plead for good cause that ICE office did not receive it." *Id*.

A few days after that, on September 28, 2024, Plaintiff drafted a second inmate complaint that stated,

> "I am being denied treatment for Degenerative Disc Disease…I refused a lab level for Topiramate, which got discontinued and I accepted responsibility for that…I expressed my willingness to fully cooperate HSU's needs.  I signed a pain management contract…which confirms this."

2

ECF No. 58-1 at 6.  Again, Plaintiff placed this inmate complaint at his cell door for correctional officers to pick up and deliver to the ICE office.  ECF No. 58, ¶5.  Again, the inmate complaint was taken from his door but Plaintiff did not hear back on the September 28 inmate complaint, so on October 2, 2024, he filed another Interview Request form asking about the status of his complaint.  *Id*. at 9.  On October 4, 2024, Plaintiff received another response stating, "I did not receive any complaint submissions on either of these days from you."  *Id*.

According to Plaintiff's Inmate Complaint History Report, he filed at least five other inmate complaints between September 2024 and March 2025 that were received by the ICE.  ECF No. 52-1 at 2 & 3; *see* ECF No. 51, ¶¶5-19.  It is unclear why Plaintiff's September 17 and September 24 inmate complaints were not received by the ICE office.

On March 13, 2025, the ICE received inmate complaint WCI-2025-3584 which stated,

> "My provider is refusing to treat my nerve pain caused by Degenerative Disc Disease…My Topiramate was discontinued by my provider which was prescribed for management of my nerve pain, caused by my Degenerative Disc Disease.  She provided nothing in its place and refused to do so, despite the nerve pain I am suffering."

ECF No. 52-2 at 8.  The ICE "rejected" the inmate complaint because the date of the occurrence was listed as September 17, 2024 and Plaintiff did not file the inmate complaint until five months later, in March 2025.  *Id*. at 2.  The ICE concluded that the inmate complaint was beyond the 14-day time limit to file with no plea for good cause.  *Id*.  The ICE noted that there was no evidence to show that Plaintiff was inhibited in any way from using the Inmate Complaint Review System since the date of the occurrence.  *Id*.  Plaintiff appealed the "rejected" inmate complaint; stated that DOC staff failed to deliver his inmate complaints; and stated that the "mailbox rule" applied.  *Id*. at 12.  The

3

Reviewing Authority (RA) found that "this complaint was appropriately rejected by the ICE in accordance with DOC 310.10(6)." *Id*. at 5.

## II.     ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011).  "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248.  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

4

## B. Exhaustion

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *See Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Id.* (citing *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Prisoners must adhere to "the specific procedures and deadlines established by the prison's policy." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). That means if Plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss his claims. *See Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, Defendants bear the burden of proving that Plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Wisconsin has an established system—the Inmate Complaint Review System ("ICRS")—that allows prisoners to file complaints about policies, rules, living conditions,

and staff actions at their institutions.  *See* Wis. Admin. Code §DOC 310.04. To properly use the ICRS, an inmate must file an inmate complaint within fourteen calendar days after the occurrence giving rise to the complaint.  §DOC 310.07(2).  "A complaint must contain sufficient information for the department to investigate and decide the complaint."  §DOC 310.07(6).  "At the discretion of the ICE, a late complaint may be accepted for good cause."  §DOC 310.07(2).  "An inmate shall request to file a late complaint in the written complaint and explicitly provide the reason for the late filing."  *Id*.  The ICE may reject an inmate complaint for a variety of reasons including submitting the complaint "beyond 14 days after the date of the occurrence giving rise to the complaint and provid[ing] no good cause" for extending the time limits.  §DOC 310.10(6)(e).  An inmate complaint "rejected" on procedural grounds may be appealed to the Reviewing Authority ("RA") within 10 calendar days, and the RA's decision is final.  §DOC 310.10(10).

An inmate complaint that is properly "rejected" as untimely filed does not fulfill the exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).  This is true because "the benefits of exhaustion" can be realized only if the prison grievance system is given a fair opportunity to consider the grievance on the merits. *Woodford v. Ngo,* 548 U.S. 81, 95 (2006).  If noncompliance "carries no significant sanction," a prisoner who does not want to participate in the prison grievance system "will have little incentive to comply with the system's procedural rules."  *Id*.  Indeed, the prisoner would be able to file an untimely inmate complaint then proceed directly to federal court, wholly bypassing the institution's review of the merits.  *Id*.

But inmates need not exhaust administrative remedies that are unavailable.  *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).  Administrative remedies are "unavailable" where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved

inmates;' (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

## C. Discussion

Defendants assert that they are entitled to summary judgment because the undisputed record establishes that the only inmate complaint received by the institution on the issue giving rise to this lawsuit—WCI-2025-3584—was properly "rejected" as untimely filed five months late without a good cause plea. ECF No. 50 & 54. Plaintiff does not directly dispute this argument. Instead, he argues that administrative remedies were "unavailable" to him in connection with his first two alleged attempts to file an inmate complaint on September 17, 2024 and September 28, 2024. Plaintiff states that he drafted and signed the inmate complaints, clearly identified the issue, then timely placed them in his prison door for delivery to the ICE office. Plaintiff states, "there is no way I am responsible for an officer's mishandling and/or misappropriating of forms in their care to be deposited correctly." *See* ECF No. 58, ¶8.

As far as I am aware, placing documents in the cell door is an acceptable way to submit documents within the institution. *See e.g. Lockett v. Bonson*, 937 F.3d 1016, 1026 (7th Cir. 2019) ("[Plaintiff] placed his [inmate] complaint in outgoing mail, and the parties did not dispute that it was picked up by a guard and should have been considered mailed."); *see e.g. Jeffery v. Marczewski*, No. 23-CV-848-JDP, 2025 WL 2675976, at *3 (W.D. Wis. Sept. 18, 2025) (holding an evidentiary hearing to assess the credibility of Plaintiff's statement that he "submitted the request and inmate complaint at issue by folding them together and putting them outside his cell door."). And Plaintiff would have

7

had no control over what happened to his inmate complaints after they were picked up from his door. Plaintiff's contemporaneously filed Interview Request forms inquiring about the status of his inmate complaints (which contained responses from the ICE office), *see* ECF No. 58-1 at 4 & 9, also tends to lend credibility to Plaintiff's assertion that he did attempt to timely file inmate complaints on the issue in September 2024. Had no other inmate complaints been filed, his argument that administrative remedies were "unavailable" to him may have been persuasive.

But Plaintiff then filed a third inmate complaint—WCI-2025-3584—raising the very same issue again as well as five other inmate complaints in connection with other issues. These inmate complaints show that administrative remedies were in fact available to him. WCI-2025-3584 was received by ICE, but was five months late with no good cause plea, even though a prior Interview Request form had specifically advised him to make a good cause plea when refiling. *See* ECF No. 58-1 at 4 (noting "you may resubmit & plead for good cause that ICE office did not receive it."). As a result, the only inmate complaint the institution received on the issue giving rise to this lawsuit was properly rejected as untimely filed without a good cause plea. I have no reasonable basis to override that conclusion. *See Clark v. Spittle*, No. 04-C-119-C, 2004 WL 941206, at *1 (W.D. Wis. Apr. 30, 2004) (holding that absent an abuse in discretion "it is not [a district court's] role to override [a complaint examiner's] decision to refrain from finding good cause for the delay…That discretion rests solely within the authority of [the complaint examiner]."); *see also Jones v. Frank*, No. 07-CV-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008) (noting that a district court should not disrupt an examiner's decision unless it was "clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts."). I cannot simply assume that defendants engaged in inappropriate

8

conduct. Plaintiff is therefore bound by the outcome of WCI-2025-3584 that was properly rejected because it did not include a good cause plea. I note that this lawsuit only involves a two-month period of time—August 2024 and September 2024. If Plaintiff is still having trouble acquiring the medication he needs, he can simply file a new inmate complaint raising that issue. Therefore, I will grant Defendants' motions for summary judgment based on Plaintiff's failure to properly exhaust administrative remedies and will dismiss this case without prejudice.

### III. CONCLUSION

For the above reasons, **IT IS HEREBY ORDERED** that Defendants' motions for summary judgment on exhaustion grounds (ECF Nos. 49 & 53) are **GRANTED**; and this case is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). **If Plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal**. If Plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If Plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for habeas corpus relief) without

9

prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 19th day of May, 2026.

**s/Lynn Adelman_____**
LYNN ADELMAN
United States District Judge

10